Counsel for the Petitioner, Mr. Bakhtiar Zhunusov. I would like to reserve two minutes for rebuttal. Very good. Thank you. Before returning to the merits of this petition, I would like to briefly address mootness. The stay order issued by this court was explicit and it said that it was not too late to halt Mr. Zhunusov's removal to Russia unless the plane was on the ground. Respondent has not complied with that order and now seeks to have this petition dismissed as moot because Mr. Zhunusov's whereabouts are presently unknown to counsel, although his disappearance is entirely consistent with his asylum claim and testimony that he would again be seized by Russian authorities at the airport in Moscow to which he was returned. I just ask you on that. There seems to have been some impression when the application was made to the district court that this was a charter flight under the control of ICE and in fact it turns out that your client was on an Aeroflot flight. So once it was up in the air and out of U.S. airspace, how do you think that the ICE authorities could have carried out the order? Yes, Your Honor. We do think that the ICE authorities could have radioed the plane or called the plane to attempt to divert it and this is where the Singh v. Waters case is particularly instructed out of the Ninth Circuit because there the court said the crew of the plane were essentially agents amenable to the direction of INS or in this case ICE. An Aeroflot crew once it was out of U.S. airspace were agents of ICE? I'm not sure what the flight that was used in the Singh case was, but in this case we do think that the respondent could have at least attempted to divert the plane by making a call to the airline or the airline crew to see if that was possible. If that wasn't possible though, we think that the respondent could have attempted to arrange for Mr. Judisoff's return on the next flight back to the United States like in the Grace v. Barr case and in that case during a hearing actually the judge in the D.C. District Court had learned that the plaintiffs in the action were being removed at the time of the hearing to El Salvador and ordered that they be returned and when ICE learned that they could not be they couldn't divert the plane at the time the plaintiffs were returned on the next flight back to the United States. Which would require the cooperation and agreement of the foreign country. I mean it's not solely a matter of ICE's actions, right? I mean you're saying they should have tried but it's not clear how successful they could have been. It's not clear and we don't have any evidence. Okay, I don't want to take up all your time. Is Aeroflot an agency of the Russian government or is it a commercial airline? I am not sure. I believe it's a commercial airline based on the representations of the respondent. I'm not sure the answer to your question, your honor. Thank you. But this court has consistently held that deportation from the U.S. doesn't render a petition for review moot. So the respondent and the respondent previously confirmed that point. Maybe you could turn to the adverse credibility finding made by the agency. I can, your honor. Thank you. Turning to the merits of this petition. Petitioners seeking relatively modest relief here of remand because first because the adverse credibility determination is premised on legal error and namely the agency's reliance on the omissions from Mr. Zhunasov's border interview and credible fear interview. Which in this case were uniquely deficient but then also because the immigration judge provided no basis for his demeanor finding. So turning to the omissions, it is true that Mr. Zhunasov didn't disclose these threatening calls he received in Kyrgyzstan in 2010 and in Russia before he fled to the U.S. in 2018 in the border interview or the credible fear interview. And while the IJ also found that he omitted these calls that he received in Russia from his I-589, the Board of Immigration Appeals held that that finding was erroneous because he did disclose them in his asylum application. Then he also testified about these calls at his removal hearing where he details both his race-based and his politically motivated claims. Now this court in Ramsamishire directs that before the BIA uses a border interview to assess credibility, the agency must closely examine airport interviews for completeness given their inherently limited forum and therefore reliability. So the border interview in this case is barely four pages long and like the credible fear interview, it's clearly an abbreviated summarized account not a verbatim one. So both the border interview and the credible fear interview in this case are uniquely and explicitly limited in scope. Neither of them is designed to elicit details. In fact, they were designed to limit them. So at no point during the border interview is Mr. Zhunasov even asked about his time or persecution in Kyrgyzstan. Wasn't it a part of the credibility finding that his demeanor was evasive? And isn't that a really difficult thing for us to second guess? Yes, it is, Your Honor. And that's because the IJ is typically afforded great deference in demeanor findings and that's because of their ability to observe a witness. But the IJ then is also required to tether his demeanor finding to the record. And that's because demeanor typically consists of these credibility cues that cannot be gleaned from a transcript. So these would include observations about eye contact or changes in speech. But we've upheld adverse credibility findings without specific factual findings that someone had shifty eyes or shifted in his seat. I mean, here the IJ said that he was evasive or it was found that he was evasive. BIA found that. And then the IJ had he had not been responding. The IJ also pointed to the inconsistencies and the omissions that you've described, how long he lived in Kazakhstan, what his job was in Russia, how many times he'd been attacked, why he left Kyrgyzstan, and other things that are clearly reflected in the record. So I'm not really sure how you can say that the adverse credibility finding was untethered to the record, except in so far as the IJ didn't record that he was also, you know, shifting in his seat while answering while failing to answer these questions. Yes, Your Honor, I understand that. And really, there are only these three issues, the omissions from the border interview, incredible fear review, the demeanor finding, and then the inconsistency about his time in Kazakhstan that are on review here, because those are the only three that the board addressed other than to to overturn the one And really, we're saying that the demeanor finding is not tethered to the record here, because all we have from the immigration judge is that he believes Mr. Zhirinovsky was evasive. It's the BIA that steps in as the fact finder and provides these examples, which are just sites to the transcript of evasiveness. So that fact finding alone constitutes legal error. But really, even if we look at the evasiveness sites that the BIA provides, it's really just showing an IJ who is not because he cannot be satisfied with any of the answers that the petitioner provides. So where Mr. Zhirinovsky adds detail or elaborates on an answer, he's admonished and asked to stop wasting the court's time. And oftentimes, there's a difference between elaborating and clarifying and testimony in the face of sort of repetitive and confusing questioning and lying. And none of these exchanges really support an evasiveness finding. But then turning back to, very briefly, back to the omissions here, the agency never relies on these omissions and never addresses the lacking reliability and explicitly limited scope of the credible fear interview and the border interview. And I can see that I'm out of time, if I may just wrap up briefly. Take a half minute. You have some rebuttal, right? You have two minutes. I do. Thank you, Your Honor. There is a case where the agency failed to consider Mr. Zhirinovsky's likelihood of future persecution, including torture, based on his race alone, which is really undisputed in this case. And an IJ's adverse credibility finding does not foreclose a claim of future harm if it's based on undisputed factual predicates. So here, the IJ's corroboration finding is not only premised on the adverse credibility finding, so he never makes a decision on whether or not corroboration was necessary or available to corroborate the remaining claims, but the IJ also never renders its independent decision on the likelihood of future persecution. All right. I think we have the argument. You have your two minutes of rebuttal. We'll hear from the government, please. Thank you. Thank you. Mr. Robbins? Good morning. May it please the Court. My name is Jonathan Robbins, and I'm here on behalf of Respondent Merrick Garland. Are you having difficulty seeing me? Yes. I have a blue screen. That's it. I've toggled my camera off. It was working when I signed in. Why don't you proceed, then? We can hear you fine. Okay. Again, I'm Jonathan Robbins, here on behalf of Merrick Garland, the Attorney General, and the Respondent on this matter. Good morning to all of you. The Court can resolve this petition for review in two different ways. The first way, and the way that the government thinks is most appropriate, is for the petition for review to be dismissed as moot and for this Court to follow its decision in Lynn against the United States Department of Justice. As explained in the letter brief filed in April of this year, the Petitioner's Counsel has conceded that she has not been in contact with a client for 18 months, and so the government's position is that the Court can simply follow its decision in Lynn and dismiss the claim as moot. Your adversary does seem to have a brief to argue, and she has argued. Why is it your concern how closely she's in contact with her client? Well, the concern, Your Honor, at least what this Court has stated as the concern, is that there has to be an active case or controversy in order to issue an opinion. Otherwise, the opinion could potentially be impermissibly advisory. That's what this Court said in Lynn. In that situation, the individual was not in contact with their client. They didn't know where their client was, and it begs the question of whether the individual has abandoned their claim. Individuals are frequently removed while their petitions for review are pending, but it is incumbent upon those petitioners to maintain contact with either their attorney or this Court in order to ensure... In light of the, let's just call it confusion that occurred at the time of Mr. Zhirinov's removal and the order of our Court that went unresponded to, I suppose, it's a little difficult for the government to rely on petition and address the adverse credibility finding and the points made by your adversary. I'll certainly turn to the adverse credibility moment, but I respectfully have to quibble just a little bit with what Your Honor just mentioned about an unresponsiveness. As soon as the Court issued that order, the government immediately informed the Court about his flight details and showed that he had been on a commercial flight and that it wasn't a flight that we could turn around. I thought that was the commercial flight from upstate New York to New York in order to New York City. That was his initial flight, but the flight that he was on at the time he filed his stay of removal was the flight from New York to Moscow, and that was also a commercial flight, the Aeroflat flight. He wasn't in the United States when the stay of removal was actually issued. He was four hours or five hours into the flight before he filed his stay with the Court. The only thing I'm quibbling is that the government somehow didn't respond. Fair enough. There was action taken. I overstated that, but I am troubled by the very close timing here and the fact that we did enter an order that ultimately had no effect at all. Respectfully, Your Honor, the statute does put the petitioner on notice that if their client is subject to a final order of removal, that the government does not have to defer removal while they wait for them to file a petition for review. The statute is very clear on that. 1252B8C says the Attorney General does not have to defer to the removal, and the petitioner was detained in this case. So petitioners, if they wanted to stay of removal, should have filed earlier and not wait until the last possible day. But getting to Your Honor's question about the merits, since it appears that Your Honor wants to discuss that, the record in this case does not The immigration judge properly relied on petitioner's demeanor, on inconsistencies and omissions in the record. And I think a simple review of this record really demonstrates that the claim very much changed from the beginning to the end during the course of these proceedings. Petitioner started out by telling immigration authorities that he was afraid of returning to Russia because of, quote, mental pressure associated with racial discrimination, and he claimed that he'd been robbed twice by skinheads. By the time the claim was finished before the IJ, that claim had changed dramatically. All of a sudden, there were now political threats from Kazakhstan. There were, all of a sudden, the number of attacks had changed from two robberies to four attacks by skinheads and two by neighbors. Petitioner didn't even bother to respond to some of the inconsistencies relied on by the IJ in his brief to the board. For example, the notion that his asylum application had indicated that he was detained in Kazakhstan in 2016. He didn't even The immigration judge and the board both noted with respect to those particular omissions that these weren't some trivial omissions. These omissions were what purportedly precipitated his departure from Russia. And if somebody's been threatened with death a mere two weeks before they've left their country, yes? I'm sorry. Oh, I'm sorry. I thought somebody was asking a question. But if somebody is relying on those particular threats of death that happened a mere two weeks before they left the country, and that was what precipitated their departure, one would expect that that would be available in, that would be one of the first things mentioned by a particular applicant. I would also point out that Petitioner claims in this case that he was beaten frequently for eight years. I mean, very frequently, regularly. And yet when he was asked in his initial interview whether he was harmed, the only thing he said was mental pressure. He didn't mention anything about being physically harmed whatsoever. So even putting aside the lack of physical, of political threats, the fact that he didn't mention any physical harm in the questions where he was asked, would you be harmed, is very telling. And so the record simply doesn't compel reversal of the agency's adverse credibility determination in this case. So even if we agree with you on the adverse credibility determination, what is your response to your adversary's argument that that doesn't bear on the likelihood that he would be persecuted because of his race or the persecution and the country conditions report that he relies on? Well, the country conditions evidence shows that as a general matter, minorities do face discrimination in Russia, and sometimes they're subject to violence in limited circumstances. But Petitioner didn't present any individualized evidence except for his own non-credible testimony that he would be likely to face any individualized risk of persecution. He didn't present any individualized evidence. In fact, the immigration judge made clear what he was trying to dig in as to why Petitioner didn't present any individualized evidence, no affidavits from any family members, no reports from the information that he purportedly sent to media outlets, which would be readily available. I mean, when Petitioner was asked about why he didn't present any of this evidence, the petitioner basically said, well, I didn't try to get it, not that it wasn't available or that he couldn't get it. And so when an individual doesn't present any individualized evidence except for testimony which is found not to be credible, that's not going to be sufficient to meet one's burden of proof to demonstrate a well-founded fear of future persecution. Could I ask you to circle back to the mootness question? I was afraid that I cut you off, and I want to make sure that I understand your argument that, are you saying we don't have an Article III case or controversy in front of us now? Well, that is what the court's decision in Lynn certainly said. And we've also cited in our letter brief to a third circuit case, which I understand that's not binding, and it's not binding on this court, it was unpublished. But they indicated that, and that situation was a little bit more similar to the one we have here, because in that case, the individual was also removed as opposed to voluntarily departing. And even in that situation... And wasn't the last communication that counsel says that she had with the client was to go forward with the petition for review? And if we were to find in his favor and find it the court that the agency erred in making its adverse credibility finding, and in not finding the basis for asylum and the other relief he sought, wouldn't that potentially open the door for his legal re-entry into the country? If he does reappear? If your court were to grant the petition for review, then of course the government would comply with its ordinary procedures for facilitating the return of an individual into the country. But I mean, if it gets to your question about Article III, the last representation that petitioner claims that she had with her counsel was on October 11th, when apparently he was detained at that time, and he told her that he wanted to pursue a petition for review and a motion for a stay of removal. But that doesn't necessarily mean that he now maintains that same position. I mean, individuals are removed all the time from the United States when they're not successful on their PFRs. And sometimes when they're removed, they just give up and they say, well, I tried, it didn't work, and they go about their way. And I would note that it is the petitioner's responsibility to maintain contact with the attorney or to maintain contact with the court to ensure that there is a live case and controversy, to make sure that the So, respectfully, look, as we've stated, if the defendant dismisses moot, you can alternatively deny on the basis of the adverse credibility finding. We think there is certainly substantial evidence in the record to support the finding here. But if the court disagrees and wants to grant the petition for review, as we stated in our letter brief of April 21st, the agency will comply with the ordinary procedures for returning somebody when it's deemed necessary for the Now, in fairness, that may be difficult in this case, because if petitioner's own counsel can't reach the petitioner, it begs the question of how DHS is going to be able to contact them. I know that I talked to DHS about this, and they have an address in their file that petitioner provided. When they tried to type in the address into Google Maps, it didn't come up. So it doesn't even seem clear that petitioner provided them with a valid address. And I'm not, I can't guarantee that they'll be able to contact them at that address. But the agency, you know, that's where they would start, that we've looked up to see if we could find some information about the relatives in the file. He doesn't leave any contact information for his mother, who seems to be the only relative that's listed. We have a date of birth and a name, and that's it. So there's not a lot to go on. But the agency would, of course, make reasonable attempts to contact him if the court requires it. Thank you very much. Your time has expired. I appreciate your argument. We'll hear rebuttal. Ms. Nowak. Thank you. I do just want to briefly go back to Mootness. The respondent cites the Lynn versus Department of Justice case. I think what's different in this case is that we have no information whatsoever other than respondent speculation that Mr. Junosoff intends to abandon these claims. In the Lynn case, Mr. Lynn was reportedly voluntarily returned to which, although non-binding, relies on a provision of the INA that was repealed in 1996 that applied to petition and does not apply to Mr. Junosoff. So there's still effective relief here that this court can provide that while it may not guarantee Mr. Junosoff's return to the United States, would at least make it more likely that he could return. Can you represent that you are authorized now today to pursue this petition on behalf of Mr. Junosoff? Yes, I can. I have given the court as much information as I have. Thank you. So to wrap up, Mr. Junosoff, he's a central Asian minority in Russia and he's an anti-corruption political activist. And during his eight years in Russia, he endured repeated detentions and abuse by the Russian government. He escaped, he fled to the U.S. seeking asylum. The procedures designed to protect Mr. Junosoff were employed so deficiently that they effectively deprived him of his right to seek protection. So the agency's factual findings here are predicated on legal errors and remand is necessary for the agency to make the required factual findings in the first instance under the correct legal standards. And if there's legal error in any part of the adverse credibility finding, because we review these or this court reviews adverse credibility findings by the totality of the circumstances, so if there's legal error in any part of the adverse credibility finding, remand is required. And the agency's adverse credibility finding here is marred by impermissible fact-finding because the IG failed to make this required demeanor finding, but also because he failed to consider the unreliability of these interviews. And yes, there is separate legal error in the failure to consider his future claim, but also in failing to engage with the country conditions under Chen v. Gonzalez. So these errors in the record as a whole compel remand, and this court can and should order Mr. Junosoff's return on remand. Thank you very much. Thank you for your arguments. We will reserve decision. Thank you.